1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| WASTE ACTION PROJECT, | ) | Case No. 3:17-CV-05445-BHS |
| | ) | |
| Plaintiff, | ) | CONSENT DECREE |
| v. | ) | |
| | ) | |
| PORT OF OLYMPIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.    STIPULATIONS

Waste Action Project sent a sixty day notice of intent to sue letter to defendant Port of Olympia (the "Port") on or about April 3, 2017, and filed a complaint on June 12, 2017, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from the Port's ocean terminal and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

On November 21, 2019, the Court found, on summary judgment, in favor of Waste Action Project as to some of its claims that the Port violated the Clean Water Act. Dkt. 133.

Waste Action Project and the Port agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means

CONSENT DECREE: No. 3:17-CV-05445-BHS - 1

of resolving this action.

Waste Action Project and the Port stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding Waste Action Project's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this 8th day of January, 2020

COASTLINE LAW GROUP PLLC

By s/Kimberly Seely
Kimberly Seely, WSBA #21676
Attorney for Defendant
Port of Olympia

PHILLIPS BURGESS PLLC

By s/Heather Burgess
Heather Burgess, WSBA #28477
Daniel Berner, WSBA #43241
Attorney for Defendant
PORT OF OLYMPIA

SMITH & LOWNEY PLLC

By   s/Alyssa Englebrecht
Alyssa Englebrecht, WSBA #46773
Richard Smith, WSBA #21788
Attorneys for Plaintiff
Waste Action Project

PORT OF OLYMPIA

By _____
Sam Gibboney
Executive Director

WASTE ACTION PROJECT

By _____
Greg Wingard
Executive Director

## II.    ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties.  Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.    This Court has jurisdiction over the parties and subject matter of this action.

CONSENT DECREE: No. 3:17-CV-05445-BHS - 2

2.      Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreements set forth below.

3.      This Consent Decree applies to and binds the parties and their successors and assigns.

4.      This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by the Port at 915 Washington Street, NE, Olympia, WA 98501 (the "Facility"), which is subject to National Pollutant Discharge Elimination System Permit No. WAR001168 (the "NPDES permit").

5.      This Consent Decree is a full and complete settlement and release of all the claims in the complaint, the sixty-day notice (including amendments thereto) and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations of the Facility. These claims are released and dismissed with prejudice.  Enforcement of this Consent Decree is Waste Action Project's exclusive remedy for any violation of its terms.

6.      This Consent Decree is a settlement of disputed facts and law. This Consent Decree is not an admission or adjudication regarding any specific allegations by Waste Action Project in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of the Port.

7.      Prior to executing this Consent Decree, the Port performed the following actions as part of its efforts to resolve this litigation:

a.      The Port updated its SWPPP to reflect the following additional BMP for loading or unloading operations of bark-on logs at its facility: On the next business day after the ship departs, the Port cleans the containment cells and rub rail.

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

b.    The Port installed permanent wooden covers over the gaps between the bull rail and I-beam along Berths 2 and 3, as depicted in Exhibit 1.

8.    The Port agrees to the terms and conditions identified below in paragraphs 9-47 in full and complete satisfaction of all the claims covered by this decree:

9.    The Port will comply fully with all conditions of the NPDES Permit and any successor, modified, or replacement permit authorizing discharges of stormwater associated with industrial activity from the Facility.

**Completion of a Level 3 Corrective Action**

10.    The Port will fully comply with all conditions of Agreed Order No. 16584, attached hereto as Exhibit 2.

**Wharf Monitoring and BMPs**

11.    No later than February 28, 2020, the Port will survey the elevations of the wharf drains in Basin A and Basin C to confirm that sheetflow will be captured if plugged or filled.  To the extent that survey results support doing so, remaining open wharf drains will be plugged/filled within thirty (30) days of the survey being completed.  If all remaining wharf drains cannot be plugged/filled, Port will identify representative sample points from the remaining open wharf drains, update its sampling plan and SWPPP, and sample pursuant to requirements of the ISGP/Permit.

12.    No later than April 30, 2020, the Port will install a 3" curb along the bull rail to prevent stormwater discharge off edge of wharf.

13.    No log loading will occur at Berth 1, as depicted in Exhibit 3.

14.    Vacuum sweeping the wharf will occur as follows:

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

i.     During bark-on log loading operations, the Port will vacuum sweep the wharf at lunch, at the end of day, and at the shift change for multi shift loading.

ii.     During bark-off log loading operations, the Port will vacuum sweep the wharf at the end of the day.  The wharf is depicted on attached Exhibit 4.

iii.     Bark debris will not be left on the wharf over the weekend.

iv.     For all other bulk and break bulk materials, the Port will review and update, as necessary, its SWPPP sweeping plan before accepting the cargo.

v.     The wharf will be swept at least once per week when no vessel is at berth.

vi.     The above measures will be incorporated into the Port's Bark Removal and Sweeping Plan described herein.

## Source Control

15.     Not later than the date of entry of this Consent Decree, the Port will no longer store logs in drainage Basin A.

16.     Not later than the date of entry of the Consent Decree, the Port will implement and maintain the following best management practices ("BMPs"):

i.     Log decks will be emptied at sufficient intervals to allow every catch basin to be inspected and cleaned, if needed, no less frequently than twice per year;

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

ii.     Immediately after a log deck is cleared, all accumulated bark will be removed, put into a bark containment cell, and the area will be swept using the Port's Elgin Crosswind Sweeper.

iii.     By April 30, 2020, the Port will evaluate technical feasibility of alternative methods of bark collection and, if feasible, will implement an alternative method within ninety (90) days.

iv.     The Port agrees to sweep travel ways and leased areas twice per week as depicted on the attached Exhibit 3 using the Port's Elgin Crosswind Sweeper.

v.     If the existing bark containment cells are inadequate to hold all the bark at the Facility, the Port will establish additional bark containment cells. If additional cells are established, the SWPPP will be amended to reflect the addition of a new cell or cells.

vi.     The Port install a bump of asphalt around the outside perimeter of the bark containment cells.

vii.     At all bark containment cells, the Port will place covers over the bark piles contained therein at the end of each business day such that the covers are in place overnight and on weekend days, unless operations are occurring.

viii.     The Port will use drip pans and absorbents under and around the debarker.

ix.     At all drain inlets, the Port will install surrounding wattle-type barriers. At all catch basins, the Port will utilize Ultra Drain Guard Part #8931 Adjustable Frame Model.

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

17. If in two quarters of a calendar year, or two consecutive quarters during the term of the Consent Decree, following implementation of all the items in paragraph 16, the sampling results show an exceedance of the permit benchmark for total suspended solids and/or chemical oxygen demand, the Port will immediately implement the following additional BMP: Acquire a high efficiency sweeper such as the Tymco DST-4 or DST-6.

18. If, after entry of this Consent Decree, the Port's quarterly monitoring exceeds the permit benchmarks for any parameter, the Port will, within ten (10) days of submitting the DMRs to Ecology, contact Waste Action Project to set up a meet and confer at which Waste Action Project's expert will consult with the Port on corrective actions, if required, under the Port's Permit.

19. Within thirty (30) days of entry of this Consent Decree, the Port will develop and implement a Bark Removal and Sweeping Plan which will be an appendix to the Port's SWPPP. The Port will keep a sweeping log which will include tracking of where sweeping has been performed and when it was performed.

20. Within one (1) year of entry of this Consent Decree, the Port will update its leases with its tenants to include details of each tenant's responsibilities related to implementation of the Port's Stormwater Pollution Prevention Plan ("SWPPP").

21. Not later than the date of entry of this Consent Decree, the Port will require annual SWPPP trainings to be attended by a Labor Relations Committee representative member for ILWU Local 47, and a representative of each of the Port's tenants. The Port will put on the annual SWPPP trainings itself.

22. Not later than the date of entry of this Consent Decree, the Port will no longer store logs within twelve (12) feet of the edge of the pavement along the shoreline to the north

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

of the wharf, as depicted in Exhibit 4. This area may be used during loading, unloading, and transport of logs.

23.     Not later than the date of entry of this Consent Decree, the Port will ensure all bark which has been accumulated through bark collection and/or sweeping throughout the day is moved into a bark containment cell by the end of each business day.

24.     Not later than the date of entry of this Consent Decree, the Port will not store any equipment, logs, bark, solid waste, raw materials, intermediate product, final product, by-product, or waste product outside of the boundary of Drainage Basin A or Drainage Basin C.

25.     Not later than the date of entry of this Consent Decree, the Port will ensure that the spill kits in the Holbrook leased area of the Facility contain a storm drain plug or cover.

26.     Not later than the date of entry of this Consent Decree, the Port will ensure that facilitation of stormwater best management practices is taken into consideration in conjunction with pavement repair at the Facility.

**SWPPP Amendments**

27.     Except as otherwise specified herein, not later than sixty (60) days after the date of entry of the Consent Decree, the Port will update its SWPPP as follows:

i.     The Port will revise Section 3 of its SWPPP to comply with Condition S3.B.4.a by including a description of each BMP selected and explaining in detail how and where the selected BMPs will be implemented.

ii.     The Port will add corn to its inventory of materials.

iii.     The Port will update its sampling plan to include documentation and justification for the "substantially identicality" of discharge points P1 and P2.

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

iv.     The Port will fully incorporate the BMPs from the SWPPP updates which are appended to the August 2018 SWPPP into Section 3 of the SWPPP where these BMPs are still applicable at the Facility.

v.      The Port will incorporate the applicable BMPs from the Implementation Manual for Log Yards into Section 3 of its SWPPP.

vi.     Where responsibilities for SWPPP implementation have been delegated to the tenants, the SWPPP will describe these designations, including which tenant is responsible, and including the name of the employee and their position, which BMP is being implemented by the tenant, the frequency of the tenant's implementation of the BMP, and any contractor the tenant hires to implement the BMP.

vii.    The Port will update its SWPPP each time it accepts a new cargo at the facility. A "new cargo" for purposes of this requirement shall mean any bulk or breakbulk cargo other than logs. The Port will provide WAP with these new SWPPP updates upon acceptance of a new cargo.

**Discharge Point P3**

28.     Not later than the date of entry of the Consent Decree, the Port will begin monitoring stormwater discharges from discharge point P3 in compliance with Condition S4 of the permit. The Port will update its sampling points with Ecology to identify P3 as a new sampling point as required by Condition S4.B.2.d.   The Port may terminate monitoring if there is no exceedance in eight (8) consecutive quarters of monitoring.

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

**Inspections**

29.     Not later than the date of entry of the Consent Decree, the Port will ensure that the Port representative responsible for performing the monthly inspections required by permit Condition S7.A physically enters the leased areas of the Facility to perform those inspections.

30.     Beginning no later than the date of entry of this Consent Decree, any time any Ecology personnel requests entry to the Facility to perform an inspection, the Port will comply with the requirements of permit Condition G3.

**Staffing**

31.     Within three (3) months of entry of the Consent Decree, the Port will review and evaluate the job description of the Environmental Program Manager. The Port will modify the description to provide this person with authority to implement the SWPPP. If necessary, the Port will reallocate responsibilities for SWPPP implementation to other Port staff or hire additional staff or contractors to ensure implementation of the SWPPP.

**Compliance Audits**

32.     Within thirty (30) days of entry of this Consent Decree, the Port will hire a mutually agreeable third party ISGP compliance auditor. This third party auditor will be permitted to inspect the Facility quarterly on an unannounced basis to review compliance with the current SWPPP and compliance with the terms of this Consent Decree. Auditor will produce a record of the inspection results, which may include photographs of the Facility.

**Shipment of Goods Other Than Logs**

33.     No later than the date of entry of this Consent Decree, if the Port contracts to accept a cargo it has not accepted before, it will undertake an analysis of whether acceptance of that new cargo constitutes a significant process change in accordance with Permit

CONSENT DECREE: No. 3:17-CV-05445-BHS - 10

Condition S2.B. Should the new cargo operation constitute a significant process change, the Port will comply with the significant process change requirements of Permit Condition S2.B.

34. No later than the date of entry of this Consent Decree, the Port will develop and implement BMPs designed to prevent bulk feed, bedding, and any other loose material associated with livestock operations from entering surface water.

35. Beginning on the date of entry of this Consent Decree, if the Port contracts to accept a cargo it has not accepted before, a representative from the Port's environmental department will attend the pre-operation ("pre-op") meeting regarding this cargo.

**Miscellaneous Items**

36. The Port will not make public statements about any environmental project funded by payments in lieu of penalty as a part of this settlement without acknowledging that the project resulted from settlement of this lawsuit and was required by this Consent Decree.

37. For the duration of this Consent Decree, the Port shall, on a quarterly basis, electronically forward to Waste Action Project copies of all reports submitted to Ecology under the ISGP and all written communications to and/or from Ecology related to any corrective actions, permit modification requests, time extension requests, and/or compliance or noncompliance with the ISGP.

**Payment in lieu of penalty**

38. Not later than fourteen (14) days after the entry of this Consent Decree by this Court, the Port will pay $625,000.00 (SIX HUNDRED TWENTY FIVE THOUSAND DOLLARS) to the Rose Foundation for projects to improve the water quality of Budd Inlet or South Puget Sound, as described in Exhibit 5 to this Consent Decree. The check will be made to the order of The Rose Foundation, Attn: Tim Little, 201 Fourth Street, Suite 102, Oakland, CA 94607. Payment will

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

include the following reference in a cover letter or on the check: "Consent Decree, Waste Action Project v. Port of Olympia, 3:17-cv-05445-BHS." A copy of the check and cover letter, if any, will be sent simultaneously to Waste Action Project and its counsel.

**Payment of costs and fees**

39. Within fourteen (14) days of entry of this Consent Decree by the Court, the Port will pay $733,000.00 (SEVEN HUNDRED THIRTY THREE THOUSAND) to cover Waste Action Project's litigation fees, expenses, and costs (including reasonable attorney and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard Smith. The Port's payment will be in full and complete satisfaction of any claims Waste Action Project has or may have, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation.

**Force Majeure**

40. A force majeure event is any event outside the reasonable control of the Port that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that the Port timely notifies Waste Action Project of the event; the steps that the Port will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

The Port will notify Waste Action Project of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after the Port becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable

CONSENT DECREE: No. 3:17-CV-05445-BHS - 12

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

period of time following the force majeure event.

By way of example and not limitation, force majeure events include

    a.    Acts of God, war, insurrection, or civil disturbance;

    b.    Earthquakes, landslides, fire, floods;

    c.    Actions or inactions of third parties over which defendant has no control;

    d.    Unusually adverse weather conditions;

    e.    Restraint by court order or order of public authority;

    f.    Strikes;

    g.    Any permit or other approval sought by the Port from a government authority to implement any of the actions required by this consent decree where such approval is not granted or is delayed, and where the Port has timely and in good faith sought the permit or approval; and

    h.    Litigation, arbitration, or mediation that causes delay.

**<u>Dispute Resolution</u>**

41.    This Court retains jurisdiction over this matter. And, while this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute Such a meeting should be held as soon as practical, but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record.  If no resolution is reached at that meeting or within thirty (30) days of the Notice, either

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

42. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA. Therefore, upon the filing of this Consent Decree by the parties, Waste Action Project will serve copies of it upon the Administration of the U.S. EPA and the Attorney General, with a copy to the Port.

43. This Consent Decree will take effect upon entry by this Court. It terminates three years after that date, or upon completion of all obligations imposed by this Consent Decree, whichever is later.

44. Both parties have participated in drafting this Consent Decree.

45. This Consent Decree may be modified only upon the approval of the Court.

46. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

47. Notifications required by this Consent Decree must be in writing. The sending party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) email. For a notice or other communication regarding

CONSENT DECREE: No. 3:17-CV-05445-BHS - 14

this decree to be valid, it must be delivered to the receiving party at the one or more addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 47.

**If to Waste Action Project**:

Greg Wingard
Waste Action Project
P.O. Box 9281
Covington, WA 98042
gwingard@earthlink.net

**And to**:

Alyssa Englebrecht
Richard Smith
Smith & Lowney PLLC
2317 East John St.
Seattle, WA 98112
email: alyssa@smithandlowney.com, richard@smithandlowney.com

**If to the Port:**

Sam Gibboney
Executive Director
Port of Olympia
606 Columbia St. NW, Suite 300
Olympia, WA 98501
sgibboney@portolympia.com

**And to:**

Heather L. Burgess
Phillips Burgess, PLLC
724 Columbia St. NW, Suite 320
Olympia, WA 9850 I
hburgess@phillipsburgesslaw.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next

CONSENT DECREE: No. 3:17-CV-05445-BHS - 15

business day. A notice or other communication will be deemed to have been received: (a) if it is delivered in person or sent by registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for notice provided by e-mail, upon receipt of a response by the party providing notice or other communication regarding this Consent Decree.

DATED this 24 day of February, 2020.

_____
HON. BENJAMIN H. SETTLE
UNITED STATES DISTRICT JUDGE

Presented by:

COASTLINE LAW GROUP PLLC

By s/Kimberly Seely
Kimberly Seely, WSBA #21676
Attorney for Defendant
Port of Olympia

PHILLIPS BURGESS PLLC

By s/Heather Burgess
Heather Burgess, WSBA #28477
Daniel Berner, WSBA #43241
Attorney for Defendant
Port of Olympia

SMITH & LOWNEY PLLC

By  s/Alyssa Englebrecht
Alyssa Englebrecht, WSBA #46773
Richard Smith, WSBA #21788
Attorneys for Plaintiff
Waste Action Project

CONSENT DECREE: No. 3:17-CV-05445-BHS - 16

**Exhibit 1**

**Wooden Covers along Rub Rail**



**Exhibit 2**

**Agreed Order No. 16584**



STATE OF WASHINGTON

# DEPARTMENT OF ECOLOGY

*PO Box 47775 • Olympia, Washington 98504-7775 • (360) 407-6300*
*711 for Washington Relay Service • Persons with a speech disability can call 877-833-6341*

July 31, 2019

Sam Gibboney
Executive Director
Port of Olympia
606 Columbia Street NW, Suite 300
Olympia, WA  98501

| Re:    Agreed Order | **Order Docket #** | 16584 |
|---|---|---|
| Dear Sam Gibboney: | **Site Location** | 915 Washington Street Northeast Olympia, WA  98501 |

Enclosed is a copy of the signed and effective Agreed Order number 16584. The enclosed Order may not be appealed. The Order is effective as of July 30, 2019.

If you have any questions concerning the content of the document, please contact Marc Pacifico by e-mail at marc.pacifico@ecy.wa.gov or (360) 407-6282.

Sincerely,

Rich Doenges
Southwest Region Manager
Water Quality Program

RD:cc
Enclosure:    Agreed Order #16584

**By certified mail: 9489 0090 0027 6019 1381 12**

cc:    Marc Pacifico, Ecology

STATE OF WASHINGTON
DEPARTMENT OF ECOLOGY

IN THE MATTER OF AN          )
ADMINISTRATIVE ORDER         )          AGREED ORDER
AGAINST:                     )          DOCKET #16584
Port of Olympia              )
Sam Gibboney                 )

To:   Sam Gibboney
      Executive Director
      Port of Olympia
      606 Columbia Street NW, Suite 300
      Olympia, WA 98501

| **Order Docket #** | 16584 |
|---|---|
| **Site Location** | 915 Washington Street Northeast Olympia, WA 98501 |

## I.   INTRODUCTION

This is an Agreed Order between the Department of Ecology (Ecology) and the Port of Olympia to achieve compliance with the Industrial Stormwater General Permit (ISGP) by taking certain actions which are described below to treat stormwater runoff to meet the Level 3 Corrective Actions in the ISGP.

## II.   RECOGNITION OF ECOLOGY'S JURISDICTION

This Agreed Order is issued pursuant to the authority vested in Ecology by the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. sec 1311, et seq. and Chapter 90.48 Revised Code of Washington (RCW).

RCW 90.48.030 provides that Ecology shall have the jurisdiction to control and prevent the pollution of streams, lakes, rivers, ponds, inland waters, salt waters, water courses, other surface and underground waters of the state of Washington.

RCW 90.48.120 authorizes Ecology to issue administrative orders requiring compliance whenever it determines that a person has violated or created a substantial potential to violate any provision of Chapter 90.48 RCW or fails to control the polluting content of waste to be discharged to waters of the state.

The Port of Olympia agrees to undertake all actions required of it by the terms and conditions of this Agreed Order and not to contest Ecology's jurisdiction and authority to

administer this Agreed Order. The Port of Olympia agrees not to appeal this Agreed Order.

Nothing in this Agreed Order shall in any way relieve the Port of Olympia of its obligations to comply with the requirements of its Permit WAR001168. Nor shall anything in this Agreed Order limit Ecology's authority to enforce the provisions of the aforementioned Permit.

## III. FINDINGS OF FACT

Ecology's determination that a violation has occurred or may occur is based on the following facts.

1. The Port of Olympia (Port) Marine Terminal is covered under ISGP Permit Number WAR001168.

2. Between 2011 and 2014, pursuant to, and in compliance with, a series of Administrative Orders governing the Port's Level 3 Corrective Action under the ISGP, the Port designed and constructed a Stormwater Treatment Facility (SWTF) for the Marine Terminal. The Port received Ecology approval of the Engineering Design Report (EDR) for the SWTF.

3. The Port's SWTF design uses a chemical oxidation based system followed by backflushing sandfilters and sludge processing. The Port's SWTF is the only system applying this technology for stormwater treatment in the state of Washington.

4. The SWTF was fully operational as of December 31, 2014.

5. On January 28, 2015, the Peroxide Containment System in the SWTF failed, resulting in a release of nine thousand six hundred (9,600) gallons of a fifty percent (50%) Hydrogen Peroxide Solution. Following the incident, pursuant to and in compliance with Agreed Orders 13316 and 13881, the Port designed and constructed repairs to the SWTF to prevent future releases. The Port received Ecology approval of an Addendum to the EDR for the SWTF for changes to the direct injection system and secondary containment.

6. The SWTF, as repaired, was fully operational as of December 31, 2016.

7. On March 17, 2017, Ecology issued the Port a Notice of Compliance with Agreed Orders 13316 and 13881.

8. Notwithstanding operation of the SWTF and timely implementation of Level 1 and 2 Corrective Action, the Port exceeded the benchmark parameter for Chemical Oxidation Demand (COD) for three (3) quarters during calendar year 2017 (first, second, and fourth quarters), triggering a Level 3 Corrective Action under Permit Condition S8.

9.   Having already implemented stormwater treatment, on March 9, 2018, the Port
     informed Ecology by letter of its intent to seek a permit modification for
     extension of time of Level 3 Corrective Action deadlines under Permit Condition
     S8.D of the permit in order to study and develop additional treatment alternatives
     or upgrades to enhance the performance of the SWTF and achieve COD
     benchmarks.

10.  On May 11, 2018, the Port submitted a timely request for modification under
     Permit Condition S8.D seeking time extension for compliance with Level 3
     Corrective Action timelines for submittal of an EDR and construction of
     treatment consistent with the framework outlined in the Port's March 9, 2018,
     letter.

11.  Ecology denied the Port's request for time extension on August 1, 2018.

12.  On September 4, 2018, the Port requested clarification of Ecology's denial as to
     Level 3 Corrective Action deadlines in light of the Port's existing stormwater
     treatment facility.

13.  On September 25, 2018, the Port submitted an EDR Addendum to Ecology
     outlining completed Level 3 Corrective Action process improvements completed
     to date and proposed additional process improvements for Ecology review. The
     Port anticipated completion of these improvements within forty-five (45) days of
     Ecology approval.

14.  On October 11, 2018, Ecology responded, recommending that the Port consider
     four general categories of potential upgrades to the system. Ecology directed the
     Port to re-evaluate the scope of proposed upgrades and to submit a new scope and
     schedule for completion of an EDR.

15.  On November 2, 2018, the Port submitted the new scope for system upgrades and
     proposed schedule for completion of an EDR. Based upon an intervening
     compliant discharge in the first quarter of 2018, the Port's ongoing
     implementation of enhanced source control Best Management Practices (BMPs),
     and construction of initial process improvements from the September 26, 2018,
     EDR Addendum, the Port proposed to complete the study and EDR for the
     upgrades and complete construction of selected improvements if the COD
     benchmark remained unmet.

16.  The Port has continued sampling, testing and evaluation of potential upgrades to
     the SWTF as it proposed for its Level 3 Corrective Action. Ecology intends to
     use its enforcement discretion to facilitate the Port's Level 3 Corrective Action.
     The Port's goal is to consistently meet permit benchmarks, i.e., four (4)
     consecutive quarters, beginning July 1, 2020. To consistently attain benchmarks
     the Port is (1) evaluating more substantial and reliable upgrade(s) to the treatment
     system and will recommend a preferred alternative in an Engineering Report, (2)
     examining upgrades which provide additional detention time for hydrogen

peroxide contact time and/or higher dosage rates, and (3) evaluating a pre-treatment accumulation cell, or a polishing unit, to further remove COD.

17. The Port met all benchmarks, including COD, in the first and second quarter of 2019.

## IV. CORRECTIVE ACTIONS

For the reasons detailed above, and in accordance with RCW 90.48.120, IT IS AGREED that the Port of Olympia and the Department of Ecology shall take the following actions by the dates set forth below. These actions are necessary to satisfy the requirements of RCW 90.48. The Port of Olympia has participated in defining these actions and the dates by which they shall be completed. The Port of Olympia shall also submit permit applications and documents needing approvals from the various government agencies in a timely fashion in order that the dates for the various actions are able to be met.

The Port of Olympia agrees to take the following actions in order to consistently meet the permit benchmarks beginning July 1, 2020:

1. Alternatives Analysis Evaluation

    A. August 1, 2019: An Alternative Analysis will be performed to evaluate potential modifications to the SWTF. The analysis comprises (1) collection of site-specific data/samples and (2) performance of bench-scale studies of each alternative as warranted. Alternative to be evaluated include the following:

        1) Modification to the Fenton's Reagent Dose – potentially improves the efficacy of COD removal by increasing the amount of oxidant that is available for oxidation;

        2) Increasing Detention Time in the Oxidation Cell – potentially improves the efficacy of COD removal by increasing the amount of time oxidation can occur in the Oxidation Cell;

        3) Increasing the Detention Time in the pH Adjustment/Settling Cell – potentially improves the efficiency of removing particles (including COD) from treated water by allowing more time for settling to occur in the pH Adjustment/Settling Cell;

        4) Adding a Third Bank of Filters (most effective medium to be determined) potentially improves the efficiency of removing particles (including COD) from treated water;

        5) Addition of a Pretreatment Accumulation Cell – potentially minimizes the range of COD entering the SWTF by allowing the pumped water to settle/equilibrate prior to treatment. This

potentially improves COD removal by more closely matching the
dose to the expected COD. This step also improves the efficiency
of removing particles (and therefore, potentially, COD) by
allowing more time for settling to occur prior to treatment (which
means less COD) in the raw water requiring treatment.

B.  October 31, 2019: An Alternative Analysis Technical Memorandum will
be developed that presents each alternative, the results of any tests that
were performed, and proposes recommended alternative(s) for modifying
the SWTF. The Port will review the Alternative Analysis Technical
Memorandum, choose a recommended alternative(s) for modifying the
SWTF, and develop an, Engineering Report that documents the design
basis for the Recommended Alternative(s) per Task 2.

2.  Engineering Report and Implementation of Improvements

A.  The Port will select its Recommended Alternative(s) from the Alternative
Analysis Technical Memorandum, and the Port will develop and submit
an Engineering Report that documents the design basis for the
Recommended Alternative(s). The Engineering Report will meet all the
requirements of WAC 173-240, and be submitted to Ecology no later than
December 31, 2019. The scope of work will be determined based on the
Recommended Alternatives Analysis.

1)  Implementation of Engineering Report – After Ecology reviews
and approves the Engineering Report, the Port will initiate
construction. Construction will be complete with the SWTF in full
operation no later than April 30, 2020.

3.  Implementation of BMPs and Other Process Improvements

A.  The Port has made and continues to make process improvements to the
SWTF and system, implementing the following:

1)  Continued review/optimization of Level 1 and Level 2 BMPs;

2)  Relocating the recirculation discharge point from the Oxidation
Cell to the pH Adjustment Cell;

3)  Moving of the sand filter intake pumps from the bottom of the
Settling Cell to the surface;

4)  Installation of two separate influent pipes equipped to
independently supply potable water to the ferrous sulfate and
hydrated line mixing chambers); and

5) Collection of COD performance samples (collected in December 2018 through February 2019) from four different points along the SWTF treatment train. The initial sampling results indicate that dissolved phase COD (at least in these samples) is responsible for the majority of the COD (i.e., not particle phase COD). Thus, the primary focus of the Alternatives Analysis/Engineering Report will be to address soluble phase COD — and not particle phase COD – which means that oxidation (not settling/filtration) may be the key to achieving the benchmark for COD. Performance monitoring sampling will continue, as warranted.

4. Permit Compliance

A. Ecology agrees to exercise its enforcement discretion with respect to the Port's implementation of process improvements and other adaptive management modifications to meet the ISGP benchmarks. The Port will consistently meet the benchmarks in the ISGP through further implementation of alternatives within the schedule set out under Task 2 and be consistently meeting the permit benchmarks beginning July 1, 2020, or likely face enforcement action by Ecology.

## V. PROGRESS REPORTING

The Port shall provide progress reports within thirty (30) days of the completion of each of the action items listed in Section IV of this Agreed Order. Progress reports shall include the date by which the actions required were completed.

The Port shall immediately notify Ecology of any occurrence which may result in noncompliance with the requirements of this Agreed Order. Such notifications shall state the nature of the potential noncompliance, the reason(s) therefore and the actions taken by the Port to address the potential noncompliance.

## VI. EFFECTIVE DATE

This Order is effective on the date the agreement has been signed by both parties.

## VII. TERMINATION OF THE AGREED ORDER

Upon completion by the Port of the actions identified in Section IV of this Agreed Order and issuance of a Notice of Compliance by Ecology, the requirements of this Agreed Order shall be deemed to be fulfilled and shall have no further effect on the Port.

## VIII. DISPUTE RESOLUTION

If a dispute arises between Ecology and the Port regarding any noncompliance with this Agreed Order, the parties shall attempt to resolve the dispute by informal resolution. A dispute shall be considered to have arisen when one (1) party notifies another, in writing,

that there is a dispute. If the parties cannot resolve the dispute informally within thirty (30) days, the Port shall serve on Ecology a written Statement of Position. Within thirty (30) days after receipt of the Port's Statement of Position, Ecology shall provide the Port with a final administrative decision.

## IX. ENFORCEMENT

Failure to comply with this Agreed Order may result in the issuance of civil penalties of up to $10,000 per day or other actions, whether administrative or judicial, to enforce the terms of this Agreed Order.

## X. THIRD PARTY RIGHT TO APPEAL

By signing this Agreed Order, the Port may not appeal this Agreed Order, however, a third party may.

A party other than the Port of Olympia has a right to appeal this Order to the Pollution Control Hearing Board (PCHB) within thirty (30) days of the date of receipt of this Order. The appeal process is governed by Chapter 43.21B RCW and Chapter 371-08 WAC. "Date of receipt" is defined in RCW 43.21B.001(2).

To appeal you must do both of the following within thirty (30) days of the date of receipt of this Order:

- File your appeal and a copy of this Order with the PCHB (see addresses below). Filing means actual receipt by the PCHB during regular business hours.

- Serve a copy of your appeal and this Order on Ecology in paper form - by mail or in person (see addresses below). E-mail is not accepted.

You must also comply with other applicable requirements in Chapter 43.21B RCW and Chapter 371-08 WAC.

Your appeal alone will not stay the effectiveness of this Order. Stay requests must be submitted in accordance with RCW 43.21B.320.

## XI.  ADDRESS AND LOCATION INFORMATION

| Street Addresses | Mailing Addresses |
|---|---|
| **Department of Ecology**<br>Attn: Appeals Processing Desk<br>300 Desmond Drive Southeast<br>Lacey, WA 98503 | **Department of Ecology**<br>Attn: Appeals Processing Desk<br>PO Box 47608<br>Olympia, WA 98504 7608 |
| **Pollution Control Hearings Board**<br>1111 Israel Road Southwest, Suite 301<br>Tumwater, WA 98501 | **Pollution Control Hearings Board**<br>PO Box 40903<br>Olympia, WA 98504-0903 |

## XII.  CONTACT INFORMATION

Please direct all questions about this Order to:

Marc Pacifico
Department of Ecology
Southwest Regional Office
Water Quality Program
P.O. Box 47775
Olympia, Washington 98504-7775

Phone: 360-407-6282
Email: marc.pacifico@ecy.wa.gov

## XIII.  MORE INFORMATION

- **Pollution Control Hearings Board Website**
  http://www.eluho.wa.gov/Board/PCHB

- **Chapter 43.21B RCW - Environmental and Land Use Hearings Office –
  Pollution Control Hearings Board**
  http://apps.leg.wa.gov/RCW/default.aspx?cite=43.21B

- **Chapter 371-08 WAC – Practice And Procedure**
  http://apps.leg.wa.gov/WAC/default.aspx?cite=371-08

- **Chapter 34.05 RCW – Administrative Procedure Act**
  http://apps.leg.wa.gov/RCW/default.aspx?cite=34.05

- **Ecology's Laws, rules, & rulemaking website**
  https://ecology.wa.gov/About-us/How-we-operate/Laws-rules-rulemaking

## XIV.  SIGNATURES

Sam Gibboney
Executive Director
Port of Olympia

7.25.19

Date

Rich Doenges
Southwest Region Manager
Water Quality Program

7/30/19

Date

# Exhibit 3

## Proposed Berth Map Exhibit



POLY_078170

Port of Olympia

MARINE TERMINAL

2014

DRAWING NO.

1 of 1

——×—— = MARINE TERMINAL
——×—— = PERIMETER FENCE

# Exhibit 4

## Port of Olympia Terminal Site Map



PORT OF OLYMPIA – MARINE TERMINAL
OLYMPIA, WA

TERMINAL SITE MAP

PHOTO DATE
July 2015

FIGURES 2018.dwg

FIGURE 2

20 SEP 2018

BUDD INLET-WEST BAY

PORT PERMIT LIMITS

12' SETBACK - NO LOG STORAGE

NO STORAGE AREA

DISCHARGE POINT P2

DISCHARGE POINT P1

VEHICLE/EQUIPMENT STORAGE

WEYERHAEUSER LOG YARD OPERATIONS

BARK CONTAINMENT CELL #2

BARK CONTAINMENT CELL #3

BARK CONTAINMENT CELL #1

DISCHARGE POINT P3

LOG YARD OPERATIONS

OUTFALL C

DISCHARGE POINT P4

WHARF

DISCHARGE POINTS D1, D92

OUTFALL A

DISCHARGE POINT A01

SAMPLE POINT A02

MATERIAL AND PARTS STORAGE

MATERIAL AND PARTS STORAGE

MOBILE DIESEL FUELER 3,000 GAL

TERMINAL WAREHOUSE

PLS/HOLBROOK LOG YARD OPERATIONS

CITY OF OLYMPIA STORMWATER DRAINAGE PIPE

ASPHALT LINED SWALES

BARK CONTAINMENT CELL #4

SAMPLE POINT TF1

HYDROGEN PEROXIDE 10,000 GAL
HYDRATED LIME 18,000 LBS
FERROUS SULPHATE 8,000 LBS

STORMWATER PONDS AND TREATMENT FACILITY

SOS STORMWATER TREATMENT UNITS

CITY OF OLYMPIA STORMWATER DRAINAGE PIPE

VEHICLE MAINTENANCE AND WASH FACILITY OIL WATER SEPARATOR

A-1: HYDRAULIC OIL 250 GAL
A-2: HYDRAULIC OIL 250 GAL
A-3: HYDRAULIC OIL 250 GAL
A-4: USED OIL 500 GAL
DS-1: VARIOUS OILS, 55 GAL EA

NO STORAGE AREA

LEGEND

PLS LOG YARD OPERATIONS

HOLBROOK LOG YARD OPERATIONS

WEYERHAEUSER LOG YARD OPERATIONS

OUTFALL 'A' BASIN

OUTFALL 'C' BASIN

PORT STORMWATER PERMIT LIMITS

**Exhibit 5**

**Rose Foundation Letter**


December 26, 2019

Peter McVeigh
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Waste Action Project, Port of Olympia (Case No: 3:17-cv-05445-BHS)

Dear Mr. McVeigh,

This letter is intended to provide assurance that I have read the Proposed Consent Decree between Waste Action Project and Port of Olympia, and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Port of Olympia as specified in the Consent Decree.

2) The Rose Foundation shall only use these Port of Olympia funds for projects to improve the water quality of Budd Inlet or South Puget Sound.

3) After the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**
The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Rose Foundation does not support lobbying activities that are prohibited by Section 501(c)(3) of the IRS Code, and no portion of the Port of Olympia funds shall be used to support any political lobbying activities whatsoever.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.
- Protect the natural environment, public health, and community and consumer rights.
- Promote collaboration between labor, environmental, business, consumer and social interests.
- Cultivate a new generation of environmental stewards and social policy leaders.
- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant's capacity to complete the project, budget information, and a specific funding request. Applications are first reviewed by Foundation staff, and the Foundation may require additional information in order to fully evaluate the application. After diligence has been completed, staff then makes recommendations to the Foundation Board for action. All grants are governed by binding grant contracts, and the Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing a strong accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director